UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLIE RAY, | : | Case No. 1:08-cv-030 |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to a period of disability and disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. 23-32) (ALJ's decision)).

**I.**

On September 23, 2003, Plaintiff filed an application for a period of disability and DIB alleging that he became disabled on January 30, 2003 due to several severe physical impairments including neck, back, shoulder, and left foot problems, and the effects of electrocution. (Tr. 23, 65, 79).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Upon denial of his claims on the state agency level, he requested a hearing *de novo* before an ALJ. A hearing was held on September 9, 2005, at which Plaintiff appeared with counsel and testified. (Tr. 23). A vocational expert, Mr. Robert Breslin, M.S., was also present and testified. (*Id.*)

On November 10, 2005, the ALJ entered his decision finding Plaintiff not disabled because he could perform a significant number of jobs in the national economy. (Tr. 23-32). That decision became the final determination upon denial of review by the Appeals Council. (Tr. 6-9).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since January 30, 2003 (20 CFR § 404.1520(b)).

3. The claimant has the following severe impairments: history of electrocution injury; degenerative disc disease/spondylosis of the cervical and lumbar spine; left shoulder osteoarthritis with tendonopathy and impingement, status-post surgery; left foot tendonitis; depression; and anxiety/post traumatic stress disorder (20 CFR § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR § 404.1520(d)).

5. After careful consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to lift,

carry, push and/or pull up to ten pounds occasionally and up to five pounds frequently. The claimant can stand and/or walk for a total of up to two hours during a typical eight-hour workday. The claimant can stand and/or walk for up to twenty minutes at a time, then must be able to sit for five minutes. The claimant can sit for no more than one hour at a time, and then must be able to stand for two to three minutes. The claimant can never crawl, climb ladders, rope or scaffolding, perform work requiring the forceful use of his left lower extremity, or work around hazardous machinery or at unprotected heights. The claimant can no more than occasionally (i.e. very little up to no more than one-third of the time) stoop, kneel, crouch, climb ramps and/or stairs, perform firm, forceful grasping with his left hand, reach above shoulder level with both upper extremities, and perform rotation of the head and neck. The claimant is unable to remember or carry out detailed instructions.

6. The claimant is unable to perform any past relevant work (20 CFR § 404.1565).

7. The claimant was born on September 26, 1966, and was thirty-seven years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 CFR § 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR § 404.1564).

9. Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR § 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR §§ 404.1560(c) and 404.1566).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from January 30, 2003, through the date of this decision (20 CFR § 404.1520(g)).

(Tr. 25 - 31).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined

by the Social Security Regulations and was therefore not entitled to a period of disability or DIB. (Tr. 32).

On appeal, Plaintiff argues that: (1) the ALJ erred because the decision does not contain an adequate evaluation of the claimant's subjective complaints and their impact on his residual functioning; (2) the ALJ erred when he ignored the vocational expert's responses to questions posed by claimant's attorney during cross-examination; (3) the ALJ erred when he failed to note that the vocational expert improperly relied on speculation instead of objective proof in response to one of the ALJ's hypothetical questions; and (4) the ALJ erred when he engaged in selective evaluation of the evidence, valuing some medical reports, while ignoring other medical reports that were more favorable to Plaintiff. (Doc. 1 at 1-2). Each argument will be addressed in turn.

**II.**

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

For his first assignment of error, Plaintiff maintains that the decision of the ALJ lacks sufficient consideration of his subjective complaints and their impact on his residual functional capacity ("RFC"), as required by 20 CFR § 404.1529 and § 416.929 and Social Security ruling 96-7p.

Social Security Ruling 96-7p(2) provides in relevant part:

> "When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effect of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's ability to do basic

> work activities. This requires the adjudicator to make a
> finding about the credibility of the individual's statements
> about the symptom(s) and its functional effects."

SSR 96-7p(4) states in relevant part: "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."

When considering a claim for disability based on pain, the Court is guided by the Sixth Circuit's instruction that, initially, there must be objective evidence of an underlying medical condition. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. *Id.; see also Felisky*, 35 F.3d at 1038-39.

Moreover, it is within the discretion of the ALJ, who actually meets with and takes testimony from an individual plaintiff, to evaluate that plaintiff's credibility. As the Sixth Circuit has found: "[i]t is for the [Commissioner], not a reviewing court, to make credibility findings." *Felisky*, 35 F.3d at 1036; *see also McGuire v. Comm'r of Soc. Sec.*, No. 98-1502, 1999 WL 196508, at *6 (6th Cir. Mar. 25, 1999) (*per curiam*) ("An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's

demeanor and credibility.").

In his testimony at the hearing, Plaintiff described shoulder pain (Tr. 287), constant neck and back pain (Tr. 288), tendonitis in his foot (Tr. 290), and the inability to bend down without back pain so severe that it feels "like a knife's stick [sic] in my back" (Tr. 292). The ALJ found that "the claimant's allegations about the duration, frequency, and intensity of his pain and other symptoms [were] not entirely consistent with the clinical evidence." (Tr. 29).

The ALJ's lengthy, two-page analysis of Plaintiff's subjective complaints clearly indicated that the ALJ considered more than just the objective clinical findings. (Tr. 28-29). The record evidences that, in making his determination, the ALJ explicitly considered: (1) the objective medical findings; (2) Plaintiff's daily activities; (3) the location, duration, frequency and intensity of his symptoms; (4) the treatment he received, including medication, surgery, physical therapy, and his response thereto; and (5) the lack of medication side effects. (Tr. 28-29). Therefore, contrary to Plaintiff's assertion, the ALJ thoroughly evaluated Plaintiff's subjective allegations using the criteria outlined in SSR 96-7p and the regulations. *See* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p; *Felisky*, 35 F.3d at 1038.

Plaintiff claims that his statements concerning pain were substantiated by the medical evidence. (Doc. 8 at 4). In support of this argument, Plaintiff relies on Dr. Torello's review of the evidence, and the fact that his shoulder pain was treated with

surgery and manipulation under anesthesia. (*Id.*) However, Plaintiff's reliance on such evidence is misplaced.

Although Dr. Torello reiterated the statements and complaints that Plaintiff made to his doctors, Dr. Torello explicitly stated that Plaintiff's pain complaints were "out of proportion to the injury" and only "partially credible." (Tr. 184). Moreover, the fact that Plaintiff's shoulder impairment was treated with surgery and manipulation under anesthesia does not establish that Plaintiff had disabling shoulder pain. Indeed, surgery often relieves pain and provides a basis for a finding of non-disability. *See Steiner v. Sec'y of Health & Human Servs.*, 859 F.2d 1228, 1230–31 (6th Cir. 1987).

In fact, Dr. Torello opined that Plaintiff's shoulder impairment merely resulted in a limited ability to reach. (Tr. 182). And, at the hearing, Plaintiff explained that he could reach out in front, but had difficulty reaching overhead. (Tr. 292). The ALJ accommodated Plaintiff's overhead reaching problem by finding that he could not perform work that required more than occasional overhead reaching. (Tr. 27). Plaintiff does not identify any further shoulder-related limitation that the ALJ should have discovered.

Plaintiff also argues that the ALJ failed to give proper weight to the evidence of his psychological limitations. (Doc. 8 at 4). In support of this argument, Plaintiff relies on his testimony that, due to difficulty with concentration and low energy, he could not perform a job where he sat, moved papers, and picked up files and took them down the

hall. (Tr. 300). *Id*. Plaintiff's testimony, however, was inconsistent with the medical evidence.

Dr. Lester, who conducted a psychological evaluation, reported that Plaintiff named the current president, vice president, and governor, recalled five out of five objects after a delay, and counted backwards. (Tr. 190). Dr. Madrigal, who also conducted a psychological evaluation, reported that Plaintiff had no problem understanding or following instructions and displayed good judgment and a good vocabulary. (Tr. 256). Moreover, Dr. Minhas, Plaintiff's treating physician, indicated that Plaintiff had no problems with recent or remote memory. (Tr. 207). Indeed, no physician or psychologist of record reported any examination findings that corroborated Plaintiff's statements that he had concentration and low-energy problems.

Plaintiff suggests that his allegations of concentration difficulties and low energy are supported by Dr. Lester's diagnoses of major depression and generalized anxiety disorder with features of post-traumatic stress disorder. (Doc. 8 at 4). However, mere diagnoses do not indicate the severity of impairments or their resulting limitation(s). *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990).

Relying on *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997), Plaintiff argues that the ALJ failed to give appropriate weight to Dr. Lester's "testimony." (*Id.*) However, Dr. Lester provided no testimony. Plaintiff further notes that, under certain circumstances, an opinion of a *treating* physician may be afforded complete deference. (*Id.*) However, Dr. Lester was not a treating physician. Dr. Lester was a one-time consultative psychologist to whom Plaintiff was referred to see at his attorney's

request. (Tr. 186). Moreover, Dr. Lester did not render an opinion or assessment of Plaintiff's mental work-related capacities. Therefore, there was no "opinion" for the ALJ to weigh.

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.").

**B.**

For his next assignment of error, Plaintiff claims that the ALJ ignored the vocational expert's ("VE") testimony that Plaintiff could not perform the jobs he identified if Plaintiff could not sit for twenty minutes or concentrate. (Tr. 310). (Doc. 8 at 5-6). In essence, Plaintiff argues that the ALJ should have found that Plaintiff could not concentrate or sit for 20 minutes.

As previously discussed, the evidence failed to support Plaintiff's allegation that he was unable to concentrate. With regard to his ability to sit, Plaintiff relies on the diagnoses of cervical disc protrusion at C4-6 and cervical degenerative disc disease

mentioned by Dr. Ahmed and Dr. Mandybur. (Tr. 223, 258). (Doc. 8 at 6). However, he cites no evidence that relates these <u>cervical</u> (*i.e.*, neck) findings to an inability to sit. Indeed, Plaintiff testified that he had difficulty sitting due to *back* pain, not cervical or neck pain. (Tr. 291). Plaintiff also relies on Dr. Ahmed's diagnosis of disc prolapse at L4-S1. (Tr. 223). (Doc. 8 at 6). Yet, as discussed earlier, a mere diagnosis does not indicate the severity of an impairment or its resulting limitation(s). *See Young*, 925 F.2d at 151.

Lastly, Plaintiff relies on the fact that he stood up four or five times during a 50 minute span at the hearing, suggesting that the ALJ should have applied a "sit and squirm" test. However, an ALJ may not rely on a "sit and squirm" test to evaluate the credibility of a claimant's pain complaints. *See Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983). Therefore, the ALJ's findings are still supported by substantial evidence.

## C.

For his third assignment of error, Plaintiff maintains that the VE improperly relied on speculation instead of objective proof when answering the ALJ's question regarding neck rotation. (Doc. 8 at 6-7).

In support of his argument, Plaintiff relies on the VE's testimony that the Dictionary of Occupational Titles ("DOT") does not classify jobs relative to the amount of neck rotation that they require. (Tr. 309). Plaintiff also relies on the fact that the VE agreed with Plaintiff's counsel's suggestion that his identification of particular jobs that required only occasional (*i.e.*, up to one-third of the day) neck rotation was not based on

"government data" and was, therefore, "speculative." (Tr. 309). However, Plaintiff ignores the totality of the VE's testimony. The VE also testified that he had personally observed the manner in which the jobs he identified were performed and that although he never "actually timed how often people turn their heads, most jobs require that you spend the majority of your time looking forward at the work." (Tr. 311). The VE also testified that "one third of the day . . . is a fairly significant amount to be rotating your neck," and stated that his testimony was based on "common sense." (Tr. 309).

The regulations do not require that a VE's testimony be supported by the DOT or "government data." *See* 20 C.F.R. § 416.966(d)(1) (the Social Security Administration has taken "administrative notice" of the DOT); *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) ("the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job"). Here, the VE's testimony was supported by his own personal observation of the jobs he identified and common sense. No more was required. *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995) ("the social security regulations do not require the Secretary or the expert to rely on classifications in the Dictionary of Occupational Titles"). The VE identified jobs based on his personal observation and Plaintiff presents no evidence that suggests these jobs require more than occasional neck rotation.

Relying on SSR 00-4p, Plaintiff further argues that "SSA adjudicators may not rely on evidence provided by a VE, VS, or other reliable source of occupational information if that evidence is based on underlying assumptions or definitions that are

*inconsistent with* our regulatory policies or definitions." (Doc. 8 at 7) (emphasis added). However, the VE's testimony was not inconsistent with the DOT because the DOT does not categorize or rate jobs according to how much neck rotation they require. Accordingly, the ALJ's decision is supported by substantial evidence and it should be affirmed. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

**D.**

For his final assignment of error, Plaintiff maintains that the ALJ engaged in selective evaluation of the evidence, valuing some medical reports, while ignoring others that were more favorable to Plaintiff. (Doc. 8 at 7-10).

Specifically, Plaintiff criticizes the ALJ for stating that he was able to bend at the waist and reach his ankles. (Tr. 28); (Doc. 8 at 8). However, repeated examinations indicated that Plaintiff was able to bend and touch his knees, midcalves, and ankles. (Tr. 223-24, 228, 240). Although Plaintiff states that this caused pain, the fact remains that he was nevertheless able to engage in significant bending.

Plaintiff also criticizes the ALJ for allegedly failing to note that Dr. Ahmed diagnosed a lumbosacral spine sprain in December 2004. (Doc. 8 at 8). However, the ALJ explicitly referred to the MRI that was performed one month later and showed more than just a simple sprain. (Tr. 26). Plaintiff also criticizes the ALJ for failing to cite Dr. Ahmed's notes concerning the MRI findings from January and April 2005. (Doc. 8 at 8). However, the ALJ explicitly discussed the January 2005 MRI results, which showed lumbar disc protrusions at L5-S1. (Tr. 26). The ALJ also discussed the April 2005 MRI

results, which revealed cervical disc protrusions at C4-5 and C5-6. (Tr. 26). However, the ALJ simply referred to the actual MRI results, rather than Dr. Ahmed's reports, which, in turn, referred to the MRI results. Contrary to Plaintiff's assertion (Doc. 8 at 8), the ALJ explicitly discussed the "more current and accurate medication information."

Plaintiff further argues that the ALJ allegedly dismissed Plaintiff's depression by noting that Dr. Minhas, who treated Plaintiff's neck, shoulder, and finger pain, repeatedly stated that Plaintiff's mood and affect were normal. (Doc. 8 at 8). However, this was just one factor that the ALJ considered in evaluating Plaintiff's mental status. Plaintiff criticizes the ALJ for noting that his Minnesota Multiphasic Personality Inventory[2] ("MMPI") produced an invalid profile. (Doc. 8 at 9). However, the fact that Plaintiff's responses on the MMPI produced an invalid profile is quite relevant. Although Plaintiff relies on the diagnoses made by Dr. Lester and Dr. Madrigal, mere diagnoses do not indicate the severity of impairments or their resulting limitation(s). *See Young*, 925 F.2d at 151. Dr. Lester assigned Plaintiff a Global Assessment of Functing[3] ("GAF") score of 55 to 60, and Dr. Madrigal assigned a GAF score of 64,[4] indicative of only "moderate" or "mild" symptoms or limitations. *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders (DSMIV- TR)*, 34 (4th Ed. Text Revision 2000)

---

[2] The MMPI is one of the most frequenty used personality tests in mental health.

[3] The GAF is a numeric scale used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults.

[4] GAF scores of 51 to 60 represent "moderate" symptoms or "moderate" difficulty in occupational functioning; GAF scores of 61 to 70 represent "mild symptoms" and reflect an individual that is "generally functioning pretty well".

Taking these findings into consideration, the ALJ's determination is supported by substantial evidence.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that Plaintiff was not entitled to a period of disability and disability income benefits, be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**


Date: June 30, 2009                s/ Timothy S. Black
                                   Timothy S. Black
                                   United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| CHARLIE RAY, | : | Case No. 1:08-cv-030 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN (10) DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN (10) DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 (1985).